**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

ONE BANK & TRUST, N.A.                                                    **PLAINTIFF**

vs.                                        **4:11CV00567 BRW**

CARMELO GALEA a/k/a                                              **DEFENDANTS**
CHARLES GALEA, *et al*.

<u>**ORDER**</u>

Pending is One Bank & Trust, N.A.'s ("Plaintiff") Motion to Dismiss, or, in the

Alternative, Answer to Counterclaim (Doc. No. 31).  Defendants have responded.[1]  For the

reasons set out below, Plaintiff's Motion is GRANTED.

**I.      BACKGROUND**

This case involves a dispute over a loan.  Plaintiff is a bank with its principal place of

business in Little Rock, Arkansas.[2]  Defendant Carmelo Galea a/k/a Charles Galea and his wife

Fae Galea are individuals who live in Lakeside, California.  Defendant Anthony Imbimbo is the

trustee of the Carmelo Galea Family Insurance Trust (the "Trust") (collectively "Defendants").

Plaintiff sued Defendants in the Circuit Court of Pulaski County, Arkansas; Defendants

removed the case to this Court based on diversity jurisdiction and filed a Counterclaim along

with their answer.  The allegations in the Counterclaim are as follows:

In 2008, Andrew Castro, an agent for Lincoln Financial Group, approached Defendants

about purchasing a large insurance policy on the life of Charles Galea, who was 81 years old at

the time.  The policy's death benefit was $25 million.  The first year's premium was $1.7

---

[1]Doc. No. 33.

[2]Doc. No. 2.

million.  At Mr. Castro's recommendation, the Galeas established the Trust to own the life insurance policy.

Mr. Castro told Defendants that Steve Burgess or the Burgess Group (the "Burgess Parties") would arrange the financing for the first year's premium.  The financing came in the form of a $1.7 million loan through Plaintiff.  Only the Burgess Parties had contact with Plaintiff: they obtained all loan documents -- including the promissory note, assignments, and personal guarantees (collectively "Loan Documents"); transmitted the completed documents to Plaintiff; and were authorized to make representations to Defendants about the loan's terms and conditions.  Plaintiff and Defendants never communicated directly with one another.  Plaintiff acknowledged that all information, communications, and documents related to the loan went through the Burgess Parties, and, among other things, relied on the Burgess Parties to verify the Defendants' financial condition.  The Burgess Parties allegedly were Plaintiff's agents.

Before the Loan Documents were executed, Plaintiff, through the Burgess Parties, represented to Defendants that: the loans were non-recourse loans; the Galeas' personal assets would not be exposed through the loan transaction; the life insurance issued was to be assigned to Plaintiff and was the only collateral needed for the loan; and, among other things, that neither Charles nor Fae Galea would have to personally guarantee the loans.  These representations allegedly were false.

Based on these representations, Defendants Charles Galea and Anthony Imbimbo executed a stack of documents (the " Loan Documents"), including a personal guarantee.  Around October 2009, Defendants were told that the life insurance policy had lapsed because the second year premium had not been paid, and that Mr. Galea would need to sign another personal guarantee to obtain new financing of the loan.  Mr. Galea maintains that he first learned that he signed the initial personal guarantee at this time.  Defendants then, on three occasions, signed

2

documents to extend the maturity of the $1.7 million loan, while attempting to rescind the transaction.  Defendants attempts were unsuccessful.

Plaintiff maintains that Defendants' Counterclaim should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3]  Defendants disagree.[4]

## II.    STANDARD OF REVIEW

In ruling on a Rule 12(b)(6) motion to dismiss, a court "accept[s] as true all of the factual allegations contained in the complaint, and review[s] the complaint to determine whether its allegations show that the pleader is entitled to relief."[5] All reasonable inferences from the complaint must be drawn in favor of the nonmoving party.[6]  A motion to dismiss should not be granted merely because the complaint "does not state with precision all elements that give rise to a legal basis for recovery."[7] A complaint need contain only "'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[8]  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."[9] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]

---

[3]Doc. No. 32.

[4]Doc. No. 33.

[5]*Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).

[6]*Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004).

[7]*Schmedding v. Tnemec Co. Inc.*, 187 F.3d 862, 864 (8th Cir. 1999).

[8]*Id.* (quoting Fed. R. Civ. P. 8(a)).

[9]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[10]

Under the *Twombly* "plausibility standard," the allegations must be evaluated to determine whether they contain facts sufficient to "nudge[] . . . claims across the line from conceivable to plausible."[11] A counterclaim must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face.[12]

## III.   DISCUSSION

Plaintiff argues that dismissal under Rule 12(b)(6) is proper because: the Burgess Parties were not its agents; Arkansas law does not support a claim for lender liability; Defendants do not state a cause of action for fraud; Defendants do not allege facts giving rise to a negligence claim; the Counterclaim fails to state a claim for rescission; and claims for punitive damages and a jury demand do not constitute causes of action and should be dismissed as separate counts.

### A.   Agency

The Supreme Court of Arkansas has adopted the following definition of agency:

The relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him subject to his control, and the other consents so to act.  The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on the principal's behalf and subject to his control.  Either of the parties to the relation may be a natural person, groups of natural persons acting for this purpose as a unit such as partnership, joint undertakers, or a legal person, such as a corporation.[13]

---

[10]*Id.* at 555 (citations omitted).

[11]*Id.* at 570.

[12]*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).

[13]*Evans v. White*, 284 Ark. 376, 378 (1985) (citing Second Restatement of the Law of Agency, § 1, comment a).

"Apparent authority of an agent is such authority . . . as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess."[14] Generally, agency is a question of fact for the jury to decide.[15] Further, the question of whether an agent acted within the scope of his actual or apparent authority is also generally a question of fact for the jury to determine.[16]

Defendants' Counterclaim alleges that: the Burgess Parties obtained all Loan Documents from Plaintiff; Plaintiff relied on the Burgess Parties to provide valuations of the life insurance policy, get needed information from Defendants, and verify Defendants' financial condition; executed Loan Documents were returned to the Burgess Parties; and that the Burgess Parties were authorized to make representations to Defendants about the terms and conditions of the loan. Defendants allege having no contact at all with Plaintiff.[17] I find that agency has been sufficiently pled to survive Plaintiff's Rule 12(b)(6) motion.

### B.        Fraud and Lender Liability Claims Under Arkansas Law

Defendants' fraud claim is not pled with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. Fraud must be plead specifically enough to answer the "who, what, where, when, and how" of the alleged fraud.[18] In connection with "who," the alleged misrepresentations were made by Plaintiff through the "Burgess Parties."[19] The Burgess Parties

---

[14]*Foundation Telcoms., Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 239 (2000) (citing *General Motors Acc. Corp. v. Salter*, 172 Ark. 691 (1927)).

[15]*Undem v. First Nat'l Bank*, 46 Ark. App. 158, 163 (1994).

[16]*Id.*

[17]Doc. No. 29.

[18]*Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2010).

[19]Doc. No. 29.

5

are defined as Steve Burgess or the Burgess Group.  Steve Burgess is an individual, but I cannot

determine what, or who, the Burgess Group is.  The alleged misrepresentations were made to

"Defendants, or their representatives."[20] Defendants do not explain who their representatives are.

I cannot determine from Defendants' Counterclaim who made the alleged misrepresentations or

to whom the those misrepresentations were made.  As for when the misrepresentations were

made, the only detail Defendants provided was "[o]n or around 2008."[21]  Defendants' allegation

of fraud does not meet Rule 9(b)'s standards.

Because Defendants' Counterclaim does not meet Rule 9(b)'s requirements, I will not

address Plaintiff's Arkansas Code Annotated § 4-59-101 argument in this Order.

### C.    Negligence

An element of negligence is the breach of a duty owed.  As Defendants acknowledge,

"Arkansas courts have not ruled on whether a bank owes a duty to prospective borrowers

regarding a loan transaction."[22] So, no cause of action exists in Arkansas at this time for a

potential customer to sue a bank for negligence.  Supposing that a bank does have a duty to

prospective borrowers under Arkansas law, Defendants' negligence claim is still on shaky

ground.  It appears that the negligence claim is based, at least in part, on the alleged

misrepresentations by the Burgess Parties.[23]  To the extent that the negligence claim is based on

misrepresentation, Arkansas does not recognize a cause of action for negligent

---

[20]Doc. No. 29.

[21]Doc. No. 29.

[22]Doc. No. 33.  Defendants cite precedent from other jurisdictions in which that duty has been found to exist.

[23]Defendants allege that "Plaintiff breached this duty of care by failing to provide accurate information to Defendants concerning the terms of the loan . . . ."  Doc. No. 29.

misrepresentation.[24]  Defendants' negligence claim also is based on a "duty of care to utilize

agents who would provide truthful and accurate information"[25] and Plaintiff purportedly

breached this duty by failing to properly supervise its agents.  Defendants' Counterclaim,

however, lacks any factual allegations in connection with those claims.[26]

### D.    Mutual Mistake

Defendants also claim mutual mistake and rescission.  The Counterclaim lacks any

factual allegations to support this claim.

### CONCLUSION

Based on the findings of fact and conclusions of law above, Defendants' Counterclaim is

DISMISSED without prejudice.  Defendants may file an amended counterclaim within two

weeks of the date of this order. If Defendants file an amended counterclaim, a demand for jury

trial and request for punitive damages may pled, but not as separate counts.

IT IS SO ORDERED this 27th  day of March, 2012.


/s/  Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

[24]*South County v. First W. Loan Co*., 315 Ark. 722, 726 (1994); *Curtis Lumber Co. v. La. Pac. Corp*., 618 F.3d 762, 774 n.3 (8th Cir. 2010) (noting that Arkansas recognizes the tort of constructive fraud, but not negligent misrepresentation).

[25]Doc. No. 29.

[26]For example, under Arkansas law, to succeed on a claim for negligent supervision of employees, a plaintiff must show "that an employer knew or, through the exercise of ordinary care, should have known that its employee's conduct would subject third parties to an unreasonable risk of harm."  *Paulino v. QHG of Springdale, Inc*., 2012 Ark. 55, at *12 (Feb. 9, 2012).